UNITED STATES of America, Plaintiff,

v.

**Wallace D. MUHAMMAD, Defendant.**

No. 4:CR94–3026.

United States District Court,
D. Nebraska.

Oct. 12, 1994.

Robert R. Nigh, Jr., Federal Public Defender's Office, Lincoln, NE, for defendant.

Sara E. Fullerton, U.S. Atty., Lincoln, NE, for the U.S.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter is before the court on the Magistrate Judge's Report and Recommendation (filing 24) and the objections to such Report and Recommendation (filing 25) filed as allowed by 28 U.S.C. § 636(b)(1)(C) and NELR 72.4.

I have conducted, pursuant to 28 U.S.C. § 636(b)(1) and NELR 72.4, a de novo review of the portions of the Report and Recommendation to which objections have been made. I find that the Report and Recommendation (filing 24) should be adopted, and that defendant's objections to the Report and Recommendation (filing 25), should be denied.

IT IS ORDERED:

1. the Magistrate Judge's Report and Recommendation (filing 24) is adopted;

2. the objections of the defendant (filing 25) are denied; and

3. defendant's motion to suppress (filing 13) is denied.

## REPORT AND RECOMMENDATION

PIESTER, United States Magistrate Judge.

Pending before the court is defendant's motion to suppress. (Filing 13). For reasons discussed more fully below, I conclude that defendant lacks standing to challenge the search of the vehicle he was driving at the time he was arrested and I shall recommend that his motion be denied as to the search of that vehicle.

## BACKGROUND

On June 17, 1994 an indictment was filed against defendant charging one count of violating 21 U.S.C. § 841(a)(1), knowingly and intentionally possessing with intent to dis-

tribute a mixture or substance containing cocaine base, a Schedule II controlled substance, in an amount in excess of 50 grams. (*See* Filing 1.) Defendant pleaded not guilty and trial was set for September 6, 1994. (Filing 3.) On July 14, 1994 defendant filed a motion requesting that the court suppress any evidence "obtained from a search of his person and automobile on May 23, 1994," as well as any derivative evidence or statements. (*See* Filing 13.)

On September 2, 1994 the court held a hearing on the suppression motion. Before the presentation of any evidence the government asked that I first rule on the issue of defendant's standing to challenge the May 23 1994 search referred to in defendant's suppression motion. I concluded that I would bifurcate consideration of the motion, first addressing the issue of standing, and then (if necessary) defendant's other bases challenging the search.

The government's sole witness was Cindi Arthur, a Lincoln police officer in the department's narcotics unit. Arthur testified that at about 5:30 May 23, 1994 she drove by the residence of Monique Falcon at 3169 "R" street and observed a silver 1990 Chevy Lumina parked in the street. Affixed to one of the windows of the Lumina was a "U Save Auto Leasing" sticker, which Arthur knew was affiliated with Delp Auto Center ("Delp") at 2240 "Q" street.[1] The Lumina pulled into the driveway of the Falcon residence and Arthur observed a black male sitting in the driver's seat talking to another black male standing on the porch of the Falcon residence. Monique Falcon was also recognized as standing on the porch.

Arthur testified that another Lincoln police officer contacted Delp Auto concerning the rental agreement for the Lumina. (*See* exh. 1, Delp Auto's copy of the Lumina's rental agreement.) Arthur learned that the Lumina had been rented by Candace Jordan, and that no one else had been authorized to drive the vehicle.[2] Arthur also learned that Can-

---

1. In fact, Arthur testified that the narcotics unit had previously rented the same 1990 Lumina through Delp.

2. Arthur testified that she was familiar with (i.e. able to recognize) Candace Jordan from prior investigation.

dace Jordan's brother, Michael Jordan, had initially tried to rent the Lumina, but was unsuccessful, at which point Candace Jordan rented the vehicle. Arthur drove by Candace Jordan's residence (about five blocks from the Falcon residence) soon after receiving this rental information (between 5:30 and 6:30 p.m.). Arthur did not see Candace Jordan or the Lumina, and made no attempt to contact Candace Jordan to investigate whether she gave defendant permission to drive it. Arthur testified that she had no information about whether such permission was ever given. About one half-hour after initially seeing the Lumina Arthur returned to the Falcon residence. Arthur did not see the Lumina, defendant or Candace Jordan.

At about 7:20 that evening Arthur and another investigating officer were contacted by a confidential informant stating that defendant had been driving the Lumina two or three hours earlier. Arthur had no prior contact with defendant and was therefore unable to identify him from sight. At about 8:40 or 8:50 that evening Arthur and the other investigating officer observed the Lumina heading southbound on 27th street. The officers followed the Lumina to about 24th and "R" street, where Arthur and the other officer stopped and searched the vehicle, eventually finding a quantity of crack cocaine. Also recovered was a copy of a rental contract with Delp Auto. (Exh. 2.) Defendant offered no evidence.

## DISCUSSION

The government argues that defendant lacks standing to contest the search of the Lumina:

[Defendant] was driving a vehicle which he did not rent, and which he was not authorized to drive. At the time officers observed him driving, he was violating *Neb. Rev.Stat.* § 28–516 (Reissue 1989) prohibiting the unauthorized use of a propelled vehicle. He had no legitimate expectation of privacy interest in the vehicle, and the police had every right to stop and search the vehicle under those circumstances.

(Defendant's Brief in Opposition to Motion to Suppress, at 8.) At the hearing defendant argued that he had a reasonable expectation of privacy in the Lumina, and that all of the evidence supported the inference that defendant had Candace Jordan's consent to drive it. The government responded that defendant had produced no evidence whatsoever to establish that Candace Jordan had given defendant permission to drive the car.

■ Defendant bears the burden of proving he had a legitimate expectation of privacy that was violated by the challenged search of the Lumina. *United States v. Kiser,* 948 F.2d 418, 423 (8th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1666, 118 L.Ed.2d 387 (1992) (citing *Rawlings v. Kentucky,* 448 U.S. 98, 104–05, 100 S.Ct. 2556, 2561–62, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois,* 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 423–24 n. 1, 58 L.Ed.2d 387 (1978)). To establish a legitimate expectation of privacy defendant must demonstrate (1) a subjective expectation of privacy; and (2) that that subjective expectation is one that society is prepared to recognize as objectively reasonable. *See id.* (citing *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979)); *see also Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516–17, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring).

■ Even assuming, *arguendo,* that defendant had a subjective expectation of privacy in the Lumina (although no evidence was presented to this effect), I conclude that any such subjective expectation is not objectively reasonable. Although there is no Eighth Circuit decision directly on point, I believe other Eighth Circuit decisions compel this conclusion. *Cf. U.S. v. Macklin,* 902 F.2d 1320, 1330–31 (8th Cir.1990) (defendant lacked legitimate expectation of privacy in trunk of codefendant's car from which his luggage was seized; defendant did not own car and claimed no ownership), *cert. denied,* 498 U.S. 1031, 111 S.Ct. 689, 112 L.Ed.2d 680 (1991); *United States v. Rose,* 731 F.2d 1337, 1343 (8th Cir.) (affirming district court's conclusion that defendant had standing where defendant's sister had given him permission to drive the car on prior occasions and defendant had car's ignition and truck keys at the time of the search), *cert. denied,* 469 U.S. 931, 105 S.Ct. 326, 83 L.Ed.2d 263 (1984); *cf. also United States v. Williams,* 714 F.2d 777,

779 n. 1 (8th Cir.1983) (defendant had standing to challenge search of car's trunk where defendant's nephew occasionally permitted defendant to use the car and gave defendant permission to use it the day of the search). These cases establish that a defendant must allege at least some degree of consent or permission from the lawful owner/renter to give rise to an objectively reasonable expectation of privacy. Here defendant presented no such evidence.

Other circuits have required a similar showing. *See, e.g., United States v. Rubio–Rivera*, 917 F.2d 1271, 1275 (10th Cir.1990) ("[w]here the defendant offers sufficient evidence indicating that he has permission of the owner to use the vehicle, the defendant plainly has a reasonable expectation of privacy in the vehicle and standing to challenge the search of the vehicle") (collecting cases); *United States v. Lee*, 898 F.2d 1034, 1038 (5th Cir.1990) (defendants entitled to challenge search of rented truck lent to them by its lessee), *cert. denied*, —— U.S. ——, 113 S.Ct. 1057, 122 L.Ed.2d 363 (1993); *United States v. Zabalaga*, 834 F.2d 1062, 1064–65 (D.C.Cir.1987) (defendant had no standing to challenge search of rental car; although defendant had physical possession of the car's keys at the time of the search, defendant was not owner or lessee of the car, was not given permission to drive it, and claimed no possessory interest in it or the items in it at the time of the search); *United States v. McCulley*, 673 F.2d 346, 352 (11th Cir.) (codefendants lacked standing to challenge search of rental car rented by other codefendant where codefendants could assert no greater possessory interest than an alleged agreement to share expenses), *cert. denied*, 459 U.S. 852, 103 S.Ct. 116, 74 L.Ed.2d 102 (1982); *United States v. McConnell*, 500 F.2d 347, 348 (5th Cir.1974) (defendant lacked standing to challenge search of rental car in which he was a passenger and codefendant (the renter) was driving, even though codefendant rented the car on defendant's credit card), *cert. denied*, 420 U.S. 946, 95 S.Ct. 1327, 43 L.Ed.2d 424 (1975); *see also United States v. Obregon*, 748 F.2d 1371, 1374–75 (10th Cir.1984) (defendant driver of rental car lacked standing to challenge search; although defendant had possession of the keys and "may have had

permission to use [the car]"; defendant "had made no showing that any arrangement had been made with the rental car company that would have allowed him to drive the car legitimately"); *United States v. Taddeo*, 724 F.Supp. 81, 83–85 (W.D.N.Y.1989) (defendant driver of rental car had no standing to challenge search of trunk; defendant claimed no ownership interest in the car, defendant's name was not on rental form and he not authorized to drive the car; defendant claimed only that the renter had given him permission to drive it; such a connection to the rental car was too attenuated to satisfy objective reasonableness), *aff'd*, 932 F.2d 956 (2nd Cir.1991).

Defendant presented no evidence that he had any legal possessory interest in the Lumina when it was searched (other than mere physical control) such that any subjective expectation of privacy would be objectively reasonable. That is, defendant was not the renter of the Lumina, was not authorized by the rental contract to drive it, and produced no evidence that Candace Jordan had consented to or given defendant any permission to drive it. Accordingly, I conclude that defendant lacks standing to challenge the search of the Lumina and I shall recommend that his motion to suppress be denied as to that vehicle search.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), that defendant's motion to suppress (filing 13) be denied as to the vehicle search of the 1990 Chevy Lumina defendant was driving May 23, 1994.

The parties are notified that unless objection is made within ten days after being served with a copy of this recommendation, they may be held to have waived any right they may have to appeal the court's order adopting this recommendation.

Dated September 7, 1994.